IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                              CRIMINAL ACTION NO. 1:05CR67

GABRIEL PAUL MASCIOLI,

    Defendant.

## ORDER AFFIRMING REPORT AND RECOMMENDATION

On August 12, 2005, Magistrate Judge John S. Kaull ("Magistrate Kaull") filed a Report and Recommendation ("R&R") recommending that this Court deny the defendant, Gabriel Paul Mascioli's ("Mascioli"), motion to exclude. Subsequently, Mascioli objected to the Magistrate's findings. For the reasons that follow, this Court **AFFIRMS** Magistrate Kaull's R&R.

### I. FACTUAL BACKGROUND

In late 2003, authorities diverted an attempt by two individuals to smuggle 1600 ecstacy tablets into the United States. The individuals subsequently informed authorities that a portion of the ecstacy tablets would have been distributed to Mascioli. Consequently, in Spring 2004, Senior Special Agent Richard P. Nicoloff ("Agent Nicoloff"), Department of Homeland Security, visited the home of Mascioli's parents in Morgantown, West Virginia and asked to speak with him. Mascioli's mother informed Agent Nicoloff that Mascioli resided in Las Vegas, Nevada, but agreed to

contact Mascioli and give him Agent Nicoloff's telephone number. Mascioli's mother subsequently telephoned Mascioli in Las Vegas and told him to contact Agent Nicoloff. A few days later, Mascioli telephoned Agent Nicoloff and agreed to return to West Virginia to speak with him. According to Mascioli, he only agreed to return because he felt threatened by Agent Nicoloff, who, he claims, stated "Don't make me come out there to get you." Agent Nicoloff, however, denies making such a statement.

In any event, both parties agree that, on May 6, 2004, Mascioli flew from Las Vegas to Pittsburgh International Airport ("PIT"), where Agent Nicoloff and Mike Manning ("Trooper Manning"), a West Virginia State Trooper assigned to the DEA's task force, met him at the terminal. Neither of the officers had uniforms on. They approached Mascioli when he deplaned, identified themselves and advised him that he was not under arrest. According to his testimony, Mascioli had expected to meet the agents at the airport in Morgantown; therefore, he asked Agent Nicoloff "what happened to Morgantown?" In response, Agent Nicoloff asked Mascioli if he and Trooper Manning could speak with him. Mascioli agreed, but expressed concern with regard to missing his connecting flight to Morgantown. The agents then offered to drive him home after the interview, which Mascioli accepted. The agents then planned to

interview Mascioli at the PIT McDonald's. Due to the large number of people in the restaurant at the time, however, they decided to take Mascioli to a conference room in the customs/border protection area of the air side of the airport. This area had slightly more security than the other air side areas of the airport.

In the conference room, Mascioli sat in the chair closest to the door and used his cell phone to inform his parents that he would be getting a ride home instead of flying from PIT to Morgantown. He further requested that his mother retrieve his luggage from the Morgantown airport. Mascioli kept his cell phone with him throughout the interview, which lasted for approximately one to one and a half hours, and received two personal phone calls after speaking with his mother. Mascioli did not attempt to terminate the interview at any time. Further, the agents did not record their conversation with Mascioli; however, Agent Nicoloff took notes, which he later used to prepare a two-page typewritten statement attributed to Mascioli.

Mascioli never received <u>Miranda</u> warnings; however, according to Agent Nicoloff, he had been informed of his freedom to leave and of his right to refuse to speak with them. Nevertheless, Mascioli claims that he did not feel free to leave. Mascioli further claims that he inquired as to whether he needed a lawyer and that the

agents responded that he did not. He concedes, however, that the agents did not handcuff or restrain him in any way and that they had told him he would be going home. Moreover, Agent Nicoloff and Trooper Manning contend that Mascioli never mentioned a lawyer. At the conclusion of the interview, as promised, Agent Nicoloff drove Mascioli to his parent's home in Morgantown.

Following that initial meeting, Mascioli telephoned Agent Nicoloff on two occasions. First, on May 16, 2004, he contacted Agent Nicoloff to provide additional information about some of the individuals he had discussed with him at PIT; then, a few weeks later, he contacted Nicoloff again to request a meeting. At the meeting, which took place at the West Virginia State Police-BCI office in Fairmont, West Virginia, Mascioli stated that he would not provide additional assistance to officials because his associates had been arrested on unrelated charges.

Mascioli now objects to the Government's attempt to use the statements he made to Agent Nicoloff and Trooper Manning at PIT against him at trial. He urges this Court to characterize these statements as "improper custodial interrogation without Miranda warnings." According to the Government, however, <u>Miranda</u> is inapplicable because Mascioli had not been in "custody" at PIT and made the statements voluntarily. This Court agrees.

**United States v. Mascioli**                    **Criminal Action No. 1:05CR67**

**ORDER AFFIRMING REPORT AND RECOMMENDATION**

**II. LEGAL ANALYSIS**

A.   *Miranda* **Warnings**

Miranda warnings are only required when a person is subject to custodial interrogation. Miranda v. Arizona, 384 U.S. 436 (1966); Dickerson v. United States, 530 U.S. 428, 444 (2000). "An individual is in custody for Miranda purposes when, under the totality of the circumstances, the suspect's freedom of action is curtailed to a degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420, 440 (1984); United States v. Howard, 115 F.3d 1151, 1154 (4th Cir. 1997).

> Neither the location nor the purpose of the interview is dispositive of whether a suspect is in custody. [Even] [t]he fact that the questioning takes place at a police station is not by itself enough to establish custody so long as the individual being interviewed would perceive that his freedom of movement was not constrained to a degree associated with arrest. . . . Further, Miranda warnings are not required when a suspect voluntarily accompanies police to the station, answers questions, and then is allowed to leave.

As Magistrate Kaull noted in his R&R, the agents in this case did not interview Mascioli in a police station and did not handcuff or restrain him in any way. Nor did they ultimately arrest him. To the contrary, the agents allowed him to use his cell phone and drove him home to Morgantown at the conclusion of the interview. Moreover, Mascioli indicated a willingness to speak with them.

5

**United States v. Mascioli**            **Criminal Action No. 1:05CR67**

**ORDER AFFIRMING REPORT AND RECOMMENDATION**

Thus, this Court agrees with Magistrate Kaull that Mascioli's interview was not "custodial" in nature.

**B.  Coercion**

Mascioli also claims that the Agent Nicoloff coerced him to make statements at PIT.  A statement, however, is only involuntary within the meaning of the due process clause if it is "extracted by . . . threats or violence" or "obtained by . . . direct or implied promises" or "the exertion of . . . improper influence." United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997).  To determine whether these conditions are present, a court analyzes whether the interrogator conducted himself in a manner that would make the defendant feel "overborne" or that his "capacity for self-determination [had been] critically impaired." United States v. Pelton, 835 F.2d 1067, 1071-72 (4th Cir. 1987).

In this case, there is no evidence that Agent Nicoloff threatened or overpowered Mascioli in any way.  As noted, the agents allowed him to use his cell phone to make and receive personal phone calls during their interview with him at PIT and Mascioli accepted a ride home with them after the interview.  Moreover, Mascioli later contacted Agent Nicoloff voluntarily, and even requested to meet with him again.  These actions do not

**United States v. Mascioli**                  Criminal Action No. 1:05CR67

**ORDER AFFIRMING REPORT AND RECOMMENDATION**

support a finding that the defendant felt frightened, coerced or threatened in any manner.

### III. CONCLUSION

The Court finds that Mascioli's statements did not result from coercion or from custodial interrogation in violation of Miranda. Accordingly, it **AFFIRMS** Magistrate Kaull's R&R.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this order of referral to counsel of record and to the Honorable John S. Kaull, United States Magistrate Judge.

DATED: August ____31____, 2005.

*/s/ Irene M. Keeley*
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE